OPINION
STATEMENT OF THE FACTS
On February 2, 2000, two armed intruders entered the home of Rudy and Trisha Stefanitsis. (T. at 391). The men were armed with guns and a butcher knife. (T. at 433, 495).
While Mr. And Mrs. Stefanitsis testified that both of the intruders wore face masks (T. at 397-398), they also testified that the mask of one of the perpetrators fell down several times. Allowing them to see his entire face. (T. 398-399, 499).
The intruders forced Mr. Stefanitsis to open his safe, from which they stole cash and comic books. (T. at 404). They also ordered Mrs. Stefanitsis to give them her wedding ring, her watch, two necklaces and two bracelets which she was wearing at the time. (T. at 405, 411, 492). The intruders also stole a bracelet which was being worn by Mr. Stefanitsis (T. at 415), $300 to $400 in cash from his wallet which was laying on a dresser (T. at 419-420), as well as a necklace removed from upstairs in the house. (T. at 415). They also took the cordless telephone. (T. at 419).
Prior to fleeing, the intruders cut the telephone lines (T. at 419) and tied up Mr. and Mrs. Stefanitsis with electrical tape. (T. at 423-424).
The Stefanitsis' three young children were also present during these events.
Upon trying to determine who might know that they possessed a safe in their house, the name of Ralph Blaine Smith was suggested to Mr. Stefanitsis. (T. at 433). A photo array was assembled by Detective Silvernail which included a photo of Ralph Blaine Smith. T. at 434). Both Mr. and Mrs. Stefanitsis separately and independently picked Appellant out of the photo array. (T. at 12-15, 434). Mr. Stefanitsis testified that he had never seen a photograph of Ralph Blaine Smith prior to viewing the photo array. (T. at 436). Testimony was also received that Mrs. Stefanitsis had never seen a picture of Appellant prior to the presentation of the photo array. (T. at 78, 110).
 STATEMENT OF THE CASE
On March 17, 2000, appellant was indicted on one count of Aggravated Burglary in violation of R.C. § 2911.11(A)(1), one count of Aggravated Burglary in violation of R.C.§ 2911.11(A)(2), one count of Aggravated Robbery in violation of R.C. § 2911.01(A)(3), two counts of Aggravated Robbery in violation of R.C. § 2911.01(A)(1), one count of Kidnaping in violation of R.C. § 2905.01(A); one count of Kidnaping in violation of R.C. § 2905.01(A)(2), and one count of Theft in violation of R.C. § 2913.02. Each of the counts, with the exception of the theft charge, also contained a firearm specification.
On April 20, 2000, Appellant filed a motion to suppress the eyewitness identification.
On June 27, 2000, after presentation of testimony by eyewitnesses and the detective, the trial court denied Appellant's motion to suppress.
On August 8, 2000, this matter proceeded to trial by jury, which continued through August 10, 2000.
On August 10, 2000, the jury returned verdicts of guilty on each count in the indictment and the firearm specifications.
A sentencing hearing was conducted on September 12, 2000.
By Judgment Entry dated September 19, 2000, the trial court imposed maximum consecutive sentence, resulting in a total of sixty-one (61) years to be served consecutively to six (6) years for the firearm specifications.
It is from this entry that appellant appeals, assigning the following errors:
 ASSIGNMENTS OF ERROR I. THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION TO SUPPRESS THE IDENTIFICATIONS OF THE STATE'S WITNESSES WHERE THE IDENTIFICATIONS WERE INHERENTLY UNRELIABLE AND WERE TAINTED BY IMPROPER LAW ENFORCEMENT PROCEDURES.
 II. THE IDENTIFICATIONS OF THE DEFENDANT, RALPH BLAINE SMITH, AT TRIAL WERE NOT OF INDEPENDENT ORIGIN, BUT WERE TAINTED BY THE PRIOR IMPROPER OUT OF COURT IDENTIFICATIONS THAT MUST BE EXCLUDED FROM A FAIR TRIAL AS GUARANTEED THROUGH THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
 III. THE TRIAL COURT ERRED IN IMPOSING UPON RALPH BLAINE SMITH, THE DEFENDANT-APPELLANT, MAXIMUM CONSECUTIVE SENTENCES IN VIOLATION OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
 IV. THE TRIAL COURT ERRED PREJUDICIALLY IN IMPOSING UPON THE DEFENDANT-APPELLANT MULTIPLE SENTENCES FOR MULTIPLE AGGRAVATED ROBBERY OFFENSES ARISING OUT OF A SINGLE INCIDENT WHICH, FOR SENTENCING PURPOSES, MERGED AS ALLIED OFFENSES OF SIMILAR IMPORT.
 V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING THE DEFENDANT-APPELLANT TO PAY RESTITUTION IN THE AMOUNT OF TEN THOUSAND DOLLARS ($10,000.00) OR ANY AMOUNT FOR THE ALLEGED VICTIMS' SPECULATIVE LOSSES.
 VI. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION
 I.
Appellant argues that the photo array identifications were inherently unreliable and were tainted by improper law enforcement procedures and that same should have been suppressed by the trial court. We disagree.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and Statev. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
In the matter presently before us, we find appellant challenges the trial court's decision concerning the ultimate issue raised in his motion to suppress. Thus, in analyzing this Assignment of Error, we must independently determine whether the facts meet the appropriate legal standard.
At the trial in this matter, Detective Silvernail testified that, after the robbery of the Stefanitsis residence, he created a photo array using six numbered photographs. In addition to appellant's photograph, the array contained photographs of five other black males with similar characteristics to appellant. Both Rudy and Trisha Stefanitsis separately picked appellant's photograph out of the array. Appellant maintains that the only reason his photograph was included in the array was because his name was provided to Det. Silvernail by the Stefanitsises and therefore they were expecting the perpetrator's picture to be in said array and that, therefore, the photo array was impermissibly suggestive.
"Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for further reason that the increased chance of misidentification is gratuitous." Neil v. Biggers (1972), 409 U.S. 188,198. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." Manson v.Brathwaite (1977), 432 U.S. 98, 106. "[R]eliability is the linchpin in determining the admissibility" of such evidence. Id. at 114.
The central question is whether, under the totality of the circumstances, the identification was reliable even if the confrontation procedure was suggestive. Neil v. Biggers, supra at 199. The factors to be considered in evaluating the likelihood of misidentification include the following:
 the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
Id. at 199-200.
Applying the Biggers' factors, we find no evidence that the trial court should have suppressed the identifications since we find that the separate out-of-court identifications of appellant by both Rudy Stefanitsis and Trisha Stefanitsis were reliable and, therefore, admissible. At trial, each testified that they had an opportunity to look at appellant's face each time his mask slipped from his face. (Motion to Suppress T. at 9, 51, 84-86, 93, 97, 102-103).
Both Mr. and Mrs. Stefanitsis demonstrated a high level of certainty in identifying appellant out of the photo array, testifying that their identification of appellant was based solely on what they recalled from the day of the robbery. (Motion to Suppress T. at 53, 57, 62, 90, 93, 97). Finally, there was not an extended length of time between the crime, which was committed on February 2, 2000, and the identification of appellant via the photo array on February 10, 2000.
Under the totality of the circumstances, we find that both Rudy and Trisha Stefanitsis' out-of-court identification of appellant's photograph in the array was reliable. The trial court, therefore, did not commit an error of law when it denied appellant's motion to suppress in this regard. Appellant's First Assignment of Error is overruled.
 II.
In his second assignment of error, appellant argues that the identification of appellant at trial was tainted by the prior improper out-of-court identifications. We disagree.
Having found in the first assignment of error that the prior out of court identification of appellant was not improper, we find appellant's second assignment of error not well-taken and overrule same.
Appellant's second assignment of error is denied.
 III.
Appellant claims that the trial court erred in imposing maximum consecutive sentences upon appellant. We disagree.
R.C. § 2953.08 governs an appeal of sentence for felony. Subsection (G)(2) states as follows:
 The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
That the sentence is otherwise contrary to law.
Appellant was found guilty of two counts of aggravated burglary, three counts of aggravated robbery, two counts of kidnaping, felonies of the first degree and one count of theft, a felony of the fourth degree. Pursuant to R.C. 2929.14(A)(1), felonies of the first degree are punishable by "three, four, five, six, seven, eight, nine, or ten years." Felonies of the fourth degree are punishable by six through eighteen months.
By judgment entry filed September 19, 2000, the trial court sentenced appellant to serve ten years on the aggravated burglary counts which merged for purposes of sentencing, and ten years on each of the remaining counts of aggravated robbery and kidnaping. The trial court also sentenced appellant to serve twelve months on the theft count. In addition, the court sentenced appellant to two separate three year sentences for the firearm specifications. The court ordered the sentences to run consecutively. The end result is that appellant will serve a total of sixty-seven years in prison.
First we will address the individual sentences. By judgment entry filed September 19, 2000, the trial court sentenced appellant to the maximum term, 67 years. R.C. § 2929.14(C) governs maximum sentencing and governs a trial court may impose the longest prison term:
 Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
As we noted in State v. Butts (December 30, 1999), Licking App. No. 99CA0029, unreported, this statute is drafted in the disjunctive. Therefore, if a trial court finds any of the "above-listed offender categories" to apply, the maximum sentence may be imposed.
In the case sub judice, the court found that appellant was likely to commit future crimes for the following reasons:
 (a) Appellant was on bond for two felony charges when he committed the instant offense. (§ 2929.12(D)(1)).
 The Defendant has a history of criminal convictions. (§ 2929.12(D)(2)).
 The Defendant has not responded favorably to sanctions previously imposed for criminal convictions. (§ 2929.12(D)(3)).
 The Defendant shows no genuine remorse for his crime. (§ 2929.12(D)(5)).
(Sept. 19, 2000, Judgment Entry at 4).
In sentencing appellant the trial court also discussed the seriousness of the offenses, finding that Appellant had committed the worst form of the offense:
 [T]he Court finds that these are not only — they are very serious offenses — aggravated robbery, aggravated burglary, kidnapping. I can't think of any other cases that are more serious than that other than murder. Especially when the Court understands and when it heard testimony of the witnesses that related to the age of the victims in this case, the acts that were committed by the defendant in this case with the use of a weapon. These could have been much more serious than what happened. Just by some accident, there could have been a death. The fact that these were young children that had to see and observe this kind of activity in their presence. Most likely, they will never forget that as long as they live.
 Burglary is probably as serious offense as can be committed against a household because, certainly, the Stefanitsises — the victims in this case should have the right and the privilege to believe that their home is sacred to anyone, especially after dark. And that's why burglary is such a serious offense.
 It is very difficult for most people to overcome the fact their homes have been burglarized, especially when they're there. And those victims will have to endure that for some great length of time. And that's why these are — the Court finds that these are extremely serious offenses.
(Sentencing T. at 25-27).
Upon review, we cannot find clear and convincing evidence that the record does not support the individual sentences or that the sentences are otherwise contrary to law.
Now we will turn our attention to the issue of consecutive sentences. R.C. § 2929.14(E)(4) states as follows:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
 The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
In sentencing appellant to consecutive sentences, the trial court found the following:
 The Court also finds that because of the way that these offenses were committed, that the harm caused by these is great, is unusual and will continue to be a serious experience for these victims. The Court finds that consecutive sentencing is necessary to fulfill the purposes of the sentencing statute for that reason alone.
(Sentencing T. at 28).
In its Judgment Entry of Sentence, the Court stated:
 . . . pursuant to § 2929.14(E) that consecutive sentencing is necessary to protect the public from future crime, and to punish the Defendant and that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct because the Defendant committed many crimes in a very short period of time.
(September 19, 2000, Judgment Entry at 5).
Upon review, we cannot find by clear and convincing evidence that the record does not support the consecutive nature of the sentences or that the aggregate sentence is otherwise contrary to law.
Under this assignment, Appellant argues that the trial court abused its discretion in failing to grant a continuance of the sentencing hearing.
A reviewing court will not reverse trial court's denial of continuance unless there is showing of abuse of discretion. State v. Crebs (1987),42 Ohio App.3d 50.
Trial counsel for appellant orally moved the Court for a continuance at the commencement of the sentencing hearing claiming surprise at the recommendation by the State in its Sentencing Memorandum.
A review of the record shows that Appellant had thirty (30) days notice of the sentencing hearing, that Appellant had the opportunity during that time to prepare a Sentencing Memorandum of his own, and that the trial court even suggested same. (T. at 623-624).
We find no abuse of discretion by the trial court in denying the motion for continuance.
Assignment of Error III is denied.
 VI.
In his fourth assignment of error, Appellant claims that the aggravated robbery charges were allied offenses of similar import which should have merged for purposes of sentencing and that the trial court erred in imposing multiple sentences for said charges. We disagree.
R.C. § 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
(Emphasis added).
As stated by the Ohio Supreme Court in State v. Rance (1999),85 Ohio St.3d 632:
 In Ohio it is unnecessary to resort to the Blockburger
test in determining whether cumulative punishments imposed within a single trial for more than one offense resulting from the same criminal conduct violate the federal and state constitutional provisions against double jeopardy. Instead, R.C. 2941.25's two-step test answers the constitutional and state statutory inquiries. The statute manifests the General Assembly's intent to permit, in appropriate cases, cumulative punishments for the same conduct.
Par. 3 of syllabus. (Emphasis added).
As noted above, allied offenses of similar import require a finding of two separate criminal offenses. Perhaps most important, however, these criminal offenses must be charged within the same indictment and punished within the same trial. In the case sub judice, we find that the trial court did not err in concluding that Appellant committed three separate acts of aggravated robbery: the robbery of the cash from the safe; the robbery of Trisha Stefanitsis' jewelry from her person; the robbery of Rudy Stefanitsis bracelet from his person and money from his wallet from an upstairs bedroom.
Appellant's fourth assignment of error is denied.
 V.
In his fifth assignment of error, appellant claims that the trial court erred in ordering him to pay restitution. We disagree.
At the sentencing hearing, the trial court ordered appellant to pay restitution in the amount of ten thousand dollars ($10,000.00).
Appellant argues that the record does not contain sufficient evidence from which the trial court could ascertain the amount of restitution to a reasonable degree of certainty and failed to establish the amount of the restitution at the time it was ordered
R.C. § 2929.18 governs financial sanctions. Subsection (A)(1) permits the imposition of restitution "by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss."
In the present case, Rudy Stefanitsis testified that the safe which was robbed contained around $10,000.00. (T. at 405).
We therefore find that the trial court did not abuse its discretion in ordering restitution in this matter.
Appellant's fifth assignment of error is denied.
 VI.
In his sixth and last assignment of error, Appellant claims that he was denied the effective assistance of counsel. We disagree.
Appellant argues that trial counsel failed to assert that Appellant had an alibi on the night of the robbery of the Stefanitsis' residence.
While it does not appear that Appellant ever communicated his assertion of an alibi to his counsel, he argues that he told Detective Silvernail that he had an alibi and that the transcript of that interview was available to his trial counsel.
The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989), 42 Ohio St.3d 136.
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley,supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. Finally, a reviewing court "will not second-guess trial strategy decisions." State v. Mason (1998), 82 Ohio St.3d 144, 157.
The decision to not put forth an alibi may have been based on the choice to not have Appellant testify at trial in order to keep the jury from knowing that Appellant was on bond from two separate burglary charges.
We find that trial counsel's representation was not deficient and therefore does not meet the first prong of Strickland.
Accordingly, appellant's sixth assignment of error is overruled.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed. Costs assessed to Appellant.
Hon. Julie A. Edwards, P.J. Hon. Sheila G. Farmer, J. Hon. John F. Boggins, J. concur.